IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 19, 2016

**JUSTIN L. HORSTEAD v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Montgomery County**
**No. 41200426      John H. Gasaway, III, Judge**

---

**No. M2015-01070-CCA-R3-PC – Filed May 18, 2016**

---

In 2013, the Petitioner, Justin L. Horstead, entered a best interest plea to aggravated robbery. The trial court sentenced him in accordance with the plea agreement to ten years, to be served concurrently with a previous probationary sentence of six years. The Petitioner timely filed a petition for post-conviction relief alleging that he had received the ineffective assistance of counsel and that, but for counsel's errors, he would have insisted on taking his case to trial. After a hearing, the post-conviction court denied the petition. On appeal, the Petitioner contends that the post-conviction court erred when it denied his petition. We affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

B. Nathan Hunt, Clarksville, Tennessee, for the appellant, Justin L. Horstead.

Herbert H. Slatery III, Attorney General and Reporter; Meredith Devault, Senior Counsel; John W. Carney, Jr., District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from allegations that the Petitioner committed aggravated robbery and two aggravated assaults. At the guilty plea hearing, on January 22, 2013, the State offered the following factual basis in support of the Petitioner's guilty plea:

> [O]n March 13th 2012 [the Petitioner] went to the home of a Mr. Settle
> here in town. At the home of Mr. Settle is a Mr. Gene Kelly. Ms.

Kimberly Hubbard, her son Talon Hubbard and another younger son were at home. Mr. Settle had just entered the home and had left the door open. Shortly behind that a hooded black male, wearing hood, ball cap, brandished a gun, asked for pills and/or money and eventually put the gun to Mr. Kelly while ordering everybody else to basically remain where they were. He collected 14 hundred dollars in cash from Mr. Kelly, that was bond money to get Ms. Miranda Yetton out of jail, and collected a --- Mr. Kelly's cell phone. The cell phone was recovered a few feet outside the apartment just a short time after [the Petitioner] left.

[The Petitioner] was identified by Mr. Kelly. Ms. Hubbard viewed a photographic lineup, identified [the Petitioner] but said that she was only about 50 percent positive, because she didn't get a good look. That was the only identifications. The other case would be dismissed in settlement. I think they've done this as a best interest plea.

The Petitioner entered a best interest plea to aggravated robbery and the other charges were dismissed. The trial court ensured that the Petitioner understood the rights that he was waiving and that his plea was knowingly and voluntarily entered.

On June 27, 2013, the Petitioner filed his petition for post-conviction relief. He was incarcerated in Kentucky at the time, and the hearing was not held until May 13, 2015. At the hearing, the parties presented the following evidence: the Petitioner testified that Counsel represented him for the charges he faced in Tennessee and also for charges he faced in Kentucky. The Petitioner said that he pleaded guilty in this matter and that he received a sentence of ten years, to be served at 85%. The Petitioner said that Counsel met with him approximately four days before trial and that the two discussed the evidence in the case and settlement offers by the State. The Petitioner said that he had two witnesses who would have provided him an alibi had the case gone to trial. One of those witnesses was the Petitioner's girlfriend at the time. On the morning of trial, Counsel informed him that the two witnesses had not arrived for court. He said that one of the witnesses had to go to school and the other had a doctor's appointment. The Petitioner said that he asked Counsel to request a continuance.

The trial court declined the motion to continue. The Petitioner said that Counsel encouraged him to accept the State's offer and plead guilty to avoid a greater sentence if he were convicted. The Petitioner said that he pleaded guilty, and he thought he received a sentence of ten years, to be served at 75%. He later learned that his sentence was to be served at 85%.

The Petitioner testified that he believed that Counsel had subpoenaed the witnesses. He acknowledged that the guilty plea transcript revealed that Counsel told the trial court that she had not subpoenaed the witnesses because they were "cooperative" witnesses. He said that he would not have pleaded guilty had those two witnesses been present on the day of trial.

The Petitioner said that Counsel also did not "subpoena" one of the police officer's video recordings from the camera mounted in his vehicle. The Petitioner said that both of his witnesses testified during his preliminary hearing in general sessions court.

During cross-examination, the Petitioner agreed that, as of the day he pleaded guilty, he had four or five previous felony convictions. He knew that he was at least a Range II offender. He agreed that, if convicted, he faced between twelve and twenty years of incarceration and that, because of his guilty plea, he received sentences concurrent with his sentence for violating a previous Community Corrections sentence. The Petitioner denied remembering that the trial court had informed him that he could get sentence reductions down to 75% but that he would have to serve at least 75% of his sentence before being eligible for parole. The Petitioner said all he remembered was "everyone" saying "75%."

Counsel testified that a court appointed her to represent the Petitioner for charges he faced in Tennessee and Kentucky. She said that she met with the Petitioner before trial and she believed she communicated the offers made to him by the State. Counsel said that the sentence that the Petitioner received was the lowest offer made to him by the State. Counsel said that, on the morning of trial, two women came to the courthouse. One of them brought the Petitioner clothing to wear. Counsel said that they called the two other witnesses, who had not arrived, from the phone of the woman who was there. Those witnesses indicated that they were not available to come to court. One witness had planned to testify as an alibi witness and the other witness would have testified that the Petitioner would not have committed these robberies.

Counsel said that she then spoke with the Petitioner who was "upset." She spent several hours discussing with the Petitioner how best to proceed. They ultimately decided to make an oral motion to continue, which the trial court denied because Counsel had not subpoenaed the witnesses. Counsel was unsure whether she knew about the witnesses before the weekend of trial, but she said that she spoke with both of them the Sunday before the trial on Monday, and the witnesses had agreed to come to court. She said, however, that she should have subpoenaed them. The State then changed the offer. The Petitioner had six years to serve on several other cases, and the State made a new offer that would allow his sentence to run concurrently with the six years. This meant

3

that the Petitioner's sentence would only be increased by the percentage of four years that he was required to serve.

Counsel testified that she was unsure whether the Petitioner had a preliminary hearing and whether his two witnesses testified if there had been a hearing. She did not recall whether she requested a copy of the transcript of the preliminary hearing. Counsel testified that she believed that, had the witnesses come to court, the Petitioner would have taken his case to trial.

During cross-examination, Counsel testified that in her eighteen years of practing law, she had never revealed her alibi witnesses during a preliminary hearing because it was not a good strategy. In her opinion, disclosure of an alibi witness at a preliminary hearing provided the State with additional time to prove that the alibi witness was lying. Counsel said that, while she did not specifically recall, she assumed that she had informed the two witnesses that they would be under oath when they testified and that, if their testimony was not truthful, they could be subject to charges of perjury.

Based upon this evidence, the post-conviction court found that the Petitioner had "failed to establish by clear and convincing evidence that he received ineffective representation or is entitled to post-conviction relief on any other grounds claimed by the Petitioner." It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it denied his petition for post-conviction relief. He asserts Counsel was ineffective by not subpoenaing two witnesses to testify on his behalf and for not requesting a transcript of the preliminary hearing where he claims the two alibi witnesses testified. The Petitioner contends that he would not have pleaded guilty but for Counsel's errors. The State counters that the Petitioner failed to present his alibi witnesses at the post-conviction hearing, and this Court may not speculate as to their testimony, so the Petitioner has not proven that Counsel's performance was deficient or that he was prejudiced. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be

4

resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be

highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When a petitioner claims that trial counsel was ineffective for failing to present a witness in support of the petitioner's defense, such witness should be presented at the post-conviction hearing. *State v. Black*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). As this court has previously stated:

> As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner. It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further

6

investigation would have revealed a material witness or what a witness's testimony might have been if introduced by defense counsel.

*Id*.

In this case, the Petitioner contends that trial counsel was ineffective for failing to subpoena his two alibi witnesses to trial or to obtain the transcript of the preliminary hearing where he alleges that they testified. The Petitioner, however, failed to present the witnesses' testimony or a transcript from the preliminary hearing at the post-conviction hearing. Neither the post-conviction court nor this Court may speculate as to what the testimony may have been or whether it would have been favorable to the Petitioner. *See id*. at 757. Accordingly, the Petitioner has failed to prove that he was prejudiced by Counsel's alleged deficiency and is not entitled to relief on this issue

### III. Conclusion

Based upon the foregoing authorities and reasoning, we affirm the post-conviction court's denial of the Petitioner's petition for post-conviction relief.

_____
ROBERT W. WEDEMEYER, JUDGE